(78 Misc. Rep. 75.)

## SMITH v. WESTCHESTER BRONXVILLE REALTY CO. et al.

(Supreme Court, Special Term, Westchester County.   October 23, 1912.)

1. CORPORATIONS (§ 320*)—RIGHTS OF STOCKHOLDERS—INJUNCTION OF IMPROPER PLAN TO RAISE FUNDS.

The courts will not interfere in the internal affairs of a corporation to determine a dispute between minority and majority stockholders as to the expediency of a plan to raise finances; but where a particular plan

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

proposed is inequitable, and subversive of the rights of a stockholder, it will be enjoined.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1439; Dec. Dig. § 320.*]

2. CORPORATIONS (§§ 320, 471*)—RIGHTS OF STOCKHOLDERS—IMPROPER PLAN TO RAISE FUNDS.

General Corporation Law (Consol. Laws 1909, c. 23) § 264, provides that, if "there shall remain any surplus" in the hands of a receiver on the dissolution of a corporation, it shall be distributed among the stockholders "in proportion to the respective amounts paid in by them severally on their shares of stock." A proposed bond issue of a corporation provided that upon any distribution of assets, after the payment in full of principal and interest, the bondholders should receive an equal share with the stockholders of the balance, until the half apportioned to the stockholders should amount to a certain sum, when the bondholders should receive the entire balance. Held, that such an arrangement is a clear destruction of the stockholders' rights of distribution in the surplus assets, and cannot be entered into, even though for the best interests of the company, over the objection of any stockholder.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1439, 1516; Dec. Dig. §§ 320, 471.*]

Action by Frank E. Smith against the Westchester Bronxville Realty Company and others. Judgment for plaintiff.

Frank Harvey Field, of New York City, for plaintiff.

Hardin, Hess & Ferguson, of New York City, for defendants.

TOMPKINS, J. This action is brought by a minority stockholder to restrain the officers of the Westchester Bronxville Realty Company from consummating a proposed bond issue, and carrying out the terms of a certain trust agreement which provides that, upon any distribution of the assets and funds of the defendant company, the holders of the said bonds shall be entitled to receive, in addition to the full payment of the principal and interest upon such bonds, an equal share with the stockholders of the balance, until the one-half apportioned to the stockholders shall amount to $90,200 (the sum paid into the company's treasury by the stockholders), and then the entire balance.

[1] On a motion for an injunction pendente lite, this court held the proposed trust agreement and bond issue to be inequitable and unjust to the plaintiff, and such other stockholders as might not participate in such issue, and the plaintiff's motion was granted. Upon the trial of this action, the facts do not essentially differ from those presented upon the said motion, although it now clearly appears that some action is necessary by the officers of the said corporation to raise money for the purpose of saving its real estate from foreclosure and sacrifice.

While this court cannot interfere in the internal affairs of defendant corporation, simply because there is a dispute between the plaintiff and the majority stockholders as to the business expediency and good judgment of the general plan of financing it, still, if the particular plan proposed by the majority stockholders is inequitable and unjust to the plaintiff, and subversive of his rights as a stockholder, this

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

court must, at his instance, make permanent the injunction and give him judgment accordingly.

[2] The defendant corporation is a real estate development company, and the proposed plan is the execution of an agreement with the Westchester Trust Company for the issue of two-year 6 per cent. profit-sharing debenture gold bonds to the total face value of $250,000, of which it is proposed to issue and sell forthwith $90,000 face value of such bonds.

The defendant corporation is the owner of about 250 acres of land in the southeastern part of Westchester county, which it purchased about October, 1906, for $300,000, paying $50,000 in cash, and giving back a purchase-money mortgage for $250,000, the lien of which is now $238,000, it having been reduced by the payment of $12,000, a portion of the land having been sold for that price. That small portion is the only land that has been sold by the defendant corporation, and it has met the carrying charges, interest payments, taxes, etc., by borrowing from the stockholders; the plaintiff contributing without protest. Further money being necessary to meet interest charges that have accrued and are unpaid, and tax and interest charges that are about to accrue, the defendants have determined upon the issue of the proposed $90,000 face value of bonds.

The said agreement, at article 3, section 3, provides that the lien of the proposed issue of bonds shall be as follows (of course, the purchase-money mortgage of $238,000 is a prior lien):

Section 3: "Upon any distribution of the assets and funds of the company, the holders of the bonds issued under this agreement shall be entitled to participate in a share of the said assets and funds of the company in the manner and to the extent following, namely: From the gross amount of the assets and funds of the company upon any distribution thereof shall first be deducted (a) all sums paid or reserved for payment of its usual and ordinary expenses of operation and administration, and for interest, insurance, and taxes; and (b) an amount sufficient to provide for the payment of the indebtedness of the company, including the principal of and interest upon the bonds issued under this agreement and then outstanding. Out of the balance of the assets and funds of the company remaining after the deduction of the amounts aforesaid, one-half of the amount of such balance shall be divided and paid upon any distribution of the assets and funds of the company to the holders of the said bonds, pro rata, according to the face value of the bonds ·held by them respectively; and the other one-half of the amount of such balance, up to the sum of $90,200, shall be divided and paid to the stockholders of the company as provided in its certificate of incorporation. Any amount remaining after the payment to the stockholders of the company of said sum of $90,200 shall be divided and paid to the holders of the said bonds, pro rata, according to the face value of the bonds held by them respectively. In no event shall the holders of the bonds issued hereunder be liable for any losses sustained by the company, and nothing herein contained shall be construed so as to make the holders of the said bonds or the trustee partners with the company or with each other."

It is the provision providing for the distribution of the "balance of the assets and funds of the company remaining after the deduction of the amounts aforesaid," which includes "the principal of and interest upon the bonds issued under this agreement and then outstanding," which requires this court to enjoin the consummation

of the proposed scheme.  The Court of Appeals, in the case of Burrall v. Bushwick Rd. Co., 75 N. Y. 211, at page 216, says:

"The capital stock is that money or property which is put into a single corporate fund by those who by subscription therefor become members of the corporate body.  That fund becomes the property of the aggregate body only. A share of the capital stock is the right to partake, according to the amount put into the fund, of the surplus profits of the corporation, and ultimately, on the dissolution of it, of so much of the fund thus created as remains unimpaired and is not liable for the debts of the corporation."

And the statute law of this state provides that, on the dissolution of a corporation and the payment of its creditors in full, if "there shall remain any surplus in the hands of the receivers, they shall distribute the same among the stockholders of such corporation, in proportion to the respective amounts paid in by them, severally, on their shares of stock."  Gen. Corp. Law, § 264.

Referring to this statutory provision, the Appellate Division, Second Department, in the case of People v. Anglo-American S. & L. Ass'n, 60 App. Div. 389, at page 403, 69 N. Y. Supp. 1054, at page 1063, says:

"This is a clear and simple recognition of the principle that every stockholder has a quasi lien upon, or an interest in, all the assets of the corporation for the value of his distributive share of such assets, after the payment of the corporate indebtedness.  He is entitled to have a sale of assets for cash or its equivalent, and cannot be compelled to submit to an exchange of his lien on the assets for a lien upon, or interest in, other securities."

It will be noted that the proposed plan provides that the holders of the proposed bonds shall, after payment in full of principal and interest, receive an equal share with the stockholders of the balance remaining until the one-half apportioned to the stockholders shall amount to $90,200 (the sum paid into the company's treasury by the stockholders), and that then the bondholders shall receive the entire balance.

It is often said that the great distinction between stockholders and bondholders is that stockholders are partners in the enterprise, while bondholders are creditors.  The proposed plan would reduce the stockholders of the defendant corporation from being partners in the enterprise to being subordinate creditors, and make the holders of the proposed bonds, in addition to their being prior creditors, the only partners in the enterprise.  The stockholders would become in fact third mortgagees jointly with the holders of the proposed bonds.  The bondholders would become, in addition to being second mortgagees, third mortgagees jointly with the stockholders, and then sole right of distribution in the remaining surplus of the assets that would make them in fact the only stockholders of the defendant corporation.

The defendants are, without doubt, acting in good faith, and have determined that the issue of bonds is preferable to the sale of a portion of the land of the defendant corporation, as a means of raising the large sum of money immediately needed; but the particular plan proposed is such that it requires the consent of every

stockholder. The plaintiff's interest is substantial, and was acquired at the time of the organization of the corporation, and long prior to the first mention of the proposed bond issue, and the case is a clear one of the destruction of a stockholder's rights of distribution in the surplus assets of the corporation. Therefore the plaintiff's opposition cannot be overcome.

The majority stockholders are perhaps right in their contention that the money needed should be raised by the issue and sale of bonds, rather than a present forced sale of land; but it should be by an ordinary issue that shall be free from the vice of the proposed plan. It may be that the rate of interest must be high, and that even with a high rate of interest the bonds must, because of present business conditions, be sold at considerably below par. By giving the bondholders the privilege, on any sale of the defendant corporation's land, to turn in bonds at par value and accrued interest as cash to be applied upon the purchase price of the land, the bonds may be made more attractive to investors, and perhaps sold more readily and under better terms of interest and subscription rate.

Whatever plan is devised, it must not exclude the present stockholders from sharing in the surplus and profits of the company, if any, after the payment of the bonded indebtedness and existing prior obligations.

Judgment for the plaintiff, with costs.